1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

SCOTT LEROY NICHOLS,         )
         )
     Petitioner,        )     2:04-cv-01540-JCM-CWH
         )
vs.         )     **ORDER**
         )
JAMES G. COX, *et al.*,         )
         )
     Respondents.        )
_____/

Before the court for a decision is an application for a writ of habeas corpus filed by Scott Leroy Nichols, a Nevada prisoner.  ECF No. 81.

I.  FACTUAL AND PROCEDURAL HISTORY

In 1999, Nichols was convicted in Nevada's Fourth Judicial District Court on two counts of drug trafficking and sentenced to two life terms.  The Nevada Supreme Court recounted some of the facts of the case as follows:

> On August 31, 1998, Nichols purchased thirty-nine bottles of ephedrine from a convenience store in West Wendover.  Rebecca Morley, the store clerk, knowing that ephedrine could be use to manufacture methamphetamine, called the West Wendover police.  The police asked her to call them back in the event Nichols returned.

> On September 2, 1998, Nichols returned to the convenience store.  This time, he purchased twenty-two bottles of ephedrine, and Morley again called the police.  Sergeant Wiskerchen and Patrolman Henry Boyd responded to the call.  Nichols had

since left the store, so Morley showed the officers surveillance tape footage of Nichols and described the automobile that Nichols drove.

Officers Wiskerchen and Boyd went looking for Nichols' vehicle.  They discovered the car parked at the Rainbow Casino Hotel and observed Nichols entering the casino.  The officers approached Nichols inside and asked to see identification.  Nichols consented.  Sergeant Wiskerchen returned to the patrol car and radioed dispatch, requesting a warrants-check on Nichols. When dispatch responded that Nichols had an outstanding warrant for a probation violation, the officers reentered the casino and promptly arrested Nichols.  As the officers brought Nichols to the patrol car, a woman approached and asked what Nichols was being arrested for and where he was going.  The woman was later identified as Shawna Wilder.

Officers Wiskerchen and Boyd transported Nichols to the West Wendover Police Department.  Sergeant Wiskerchen briefed the arrest to Officer Gerald Cook and Detective Sandra Gunter, who then sought to locate the hotel where Nichols had been staying.  At the Rainbow Hotel, the officers discovered that a room had been registered to a "Lisa Nichols."  The registration information indicated the Lisa Nichols had the same Salt Lake City address as Scott Nichols.

Rick Portella, an employee of the hotel, told the officers that Lisa Nichols had checked out at approximately 10:00 a.m.  He was unsure, however, whether Lisa had left the room yet.  It was now just past 11:00 a.m., the hotel checkout time.  Portella indicated to the officers that they could inspect Nichols' room, and he accompanied them to the room door.

Portella then knocked at the door and announced himself as part of the management.  When there was no response from inside, he attempted to open the door with a master key.  At this moment, Wilder opened the door from the inside.  Cook later testified to smelling the pungent odor that was similar to the smell of cleaning fluids.  Wilder told the officers that Lisa Nichols had left the room earlier.  Wilder admitted that she knew Scott Nichols and had stayed in the room with him.

The officers informed Wilder that they were sealing the room and that they intended to procure a search warrant.  After searching Wilder's purse, they permitted her to leave.  After obtaining a warrant, the officers searched the hotel room and discovered a number of containers containing marijuana, methamphetamine and drug paraphernalia.  Ultimately, the police recovered over forty-seven grams of methamphetamine.

The search warrant also authorized the officers to search Nichols' automobile.  The police found additional drug paraphernalia in the car's trunk, including a propane torch.

Scott Nichols was charged with two counts of trafficking in over an ounce (twenty-eight grams) of a controlled substance, which is a class A felony, punishable by life imprisonment with eligibility for parole after ten years. [Fn: *See* NRS 453.3385.] (The State dropped a third charge of marijuana possession.)  Finding probable cause, the Elko Justice Court bound Nichols over on the trafficking charges.

2

1

2          Nichols filed a motion to suppress all evidence, arguing that it was the result
      of an illegal seizure.  On August 27, 1999, a hearing was held on the motion to
3      suppress, and the district court denied the motion on the bases that the officers
      properly stopped Nichols in the casino and that Wilder had no expectation of privacy
      in the room after checkout time. . . .

4    ECF No. 46-25, p. 2-4

5          The Nevada Supreme Court affirmed the judgment of the district court on February 7, 2001.

6          Having retained attorney Andrew M. Leavitt, Nichols filed, on February 1, 2002, a petition

7    for writ of habeas corpus in the Fourth Judicial District Court for Nevada.  The court conducted an

8    evidentiary hearing on July 11, 2003.  On July 31, 2003, the court entered an order denying the

9    petition, with the clerk issuing a notice of entry of order on August 28, 2003.

10         Nichols appealed.  On September 15, 2004, the Nevada Supreme Court issued an order of

11   affirmance.  The remittitur was issued on October 12, 2004.

12         On November 8, 2004, this court received Nichols' federal petition seeking relief under 28

13   U.S.C. § 2254.  On August 31, 2005, Nichols filed an amended petition.  Then, after appointment of

14   counsel, he filed, on January 11, 2008, another amended petition, styled as his "first amended

15   petition for writ of habeas corpus."

16         Respondents moved to dismiss the petition, arguing that each ground was unexhausted.  The

17   court granted the motion, in part, finding ground 2 partially unexhausted and grounds 3-6 wholly

18   unexhausted.  Nichols then moved for a stay under *Rhines v. Weber*, 544 U.S. 269 (2005), so he

19   could return to state court to exhaust such claims.  That motion was granted on July 14, 2008.

20         On August 28, 2008, Nichols filed a petition for writ of habeas corpus in the Fourth Judicial

21   District Court for Nevada.   The court denied the petition on June 9, 2009.  Nichols appealed.  The

22   Nevada Supreme Court affirmed the lower court in an order entered on November 8, 2010.  The

23   remittitur was issued on December 3, 2010.

24         On May 9, 2011, this court granted Nichols' motion and reopened these proceedings and

25   ordered that an amended petition be filed.

26
                                             3

1    On June 23, 2011, he filed the "second amended petition" that is now before the court for

2    decision.  On July 7, 2011, Nichols filed a declaration abandoning a portion of ground  2.

3    On April 13, 2012, respondents filed a motion to dismiss grounds 3 through 6 of the second

4    amended petition on the ground that the claims are procedurally defaulted.  Nichols opposed the

5    motion, arguing that he could show cause and prejudice to overcome his procedural defaults.  On

6    March 26, 2013, this court denied the motion without prejudice and ordered respondents to file an

7    answer which was to "include substantive arguments on the merits as to each ground in the petition,

8    as well as any procedural defenses which may be applicable."  ECF No. 77, p. 7.

9    In their answer, respondents argue that each of the grounds in Nichols' petition is without

10   merit and that Nichols cannot establish cause and prejudice to excuse the procedural default of

11   grounds 3 through 6.  In addition, respondents argue that grounds 2 through 6 are barred by the

12   statute of limitations and that grounds 3 through 6 are not cognizable in a federal habeas proceeding.

13   II.  TIMELINESS

14   This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA).

15   AEDPA imposes a one-year filing period for § 2254 habeas petitions in federal court.  28 U.S.C. §

16   2244(d)(1).  The one-year period begins to run from the latest of four possible triggering dates, with

17   the most common being the date on which the petitioner's state court conviction became final (by

18   either the conclusion of direct appellate review or the expiration of time for seeking such review).

19   *Id.*  Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-

20   conviction proceeding or other collateral review is pending.  28 U.S.C. § 2244(d)(2).

21   Respondents concede that Nichols filed his initial petition herein within the one-year filing

22   period under § 2244(d)(1).  Respondents argue, however, that the AEDPA statute of limitations

23   expired long before Nichols filed his second and third amended petitions in 2008 and 2011,

24

25

26

4

1   respectively, and that grounds 2 through 6 do not "relate back" to the amended petition Nichols filed

2   in 2005.[1]

3         The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a

4   habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition

5   and, therefore, be considered timely under 28 U.S.C. § 2244(d).  In *Mayle*, the Court held that the

6   Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now

7   Rule 15(c)(1)(B)),[2] which allowed an amendment to a habeas petition to "relate back" to the date of

8   the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or

9   sentence," was too broad.  *Id*. at 656-57.  The Court held that an amended claim in a habeas petition

10  relates back for statute of limitations purposes only if it shares a "common core of operative facts"

11  with claims contained in the original petition.  *Id*. at 663-64.  The common core of operative facts

12  must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R.

13  Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief.  *Id*. at 661.

14        Here, the court agrees that grounds 2 through 6 do not share a "common core of operative

15  facts" with any of the claims in the amended petition filed in 2005.  However, with the exception of

16  ground 5, Nichols raised essentially the same claims in his *initial* petition – i.e., ground 2 was raised

17  as ground 11 in the initial petition, ground 3 as ground 12, ground 4 as ground 10, and ground 6 as

18  ground 13.

19        In the Ninth Circuit, an amended pleading supersedes any prior pleadings. *See, e.g., King v.*

20  *Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("All causes of action alleged in an original complaint

21  which are not alleged in an amended complaint are waived.").  Arguably, Nichols waived the

22

23

24      [1]  Nichols captioned his counseled 2008 and 2011 petitions as his first amended and second amended petitions, respectively, even though he had filed a pro se amended petition in 2005.

25      [2]  Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

26

relevant original claims when he left them out of his 2005 amended petition, then allowed the statute of limitations run with respect to those claims.  This court cannot ignore, however, that the rationale for permitting relation back under Federal Rule 15(c) is that the defendants, because of the original complaint, are on notice of the subject matter of the dispute and will not be unduly surprised or prejudiced by the later complaint.  *See Anthony v. Cambra*, 236 F.3d 568, 576 (9th Cir. 2000) (stating that one of the central policies of Rule 15(c) is to "ensur[e] that the non-moving party has sufficient notice of the facts and claims giving rise to the proposed amendment").

Respondent responded to the relevant claims in the motion to dismiss they filed April 8, 2005 (ECF No. 8), and therefore are not prejudiced by allowing the petitioner to proceed with those claims.  Under these unusual circumstances, the court concludes that grounds 2, 3, 4, and 6 of Nichols' current petition relate back to the date of the initial petition and are therefore timely.

With respect to ground 5, Nichols argues that the claim is timely under the doctrine of equitable tolling.  Equitable tolling is appropriate only if the petitioner can show:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.  *Holland v. Florida*, 130 S.Ct. 2549, 1085 (2010).  Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion." *Miranda*, 292 F.3d at 1065.

In ground 5, Nichols alleges that the trial court's failure inquire into whether an actual conflict existed between him and his attorney denied him is constitutional right to effective assistance of counsel.  He identifies the following as extraordinary circumstances that warrant equitable tolling for the claim:  (1) the trial court's incorrect advice regarding the remedy for the denial of his motion to dismiss counsel, (2) his trial counsel's actual conflict of interest, (3)

6

1  ineffective assistance of trial and appellate counsel, and (4) ineffective assistance of post-conviction

2  counsel.  Even considered together, these circumstances fail to account for the delay in raising

3  ground 5 that occurred after the conclusion of Nichols' initial state post-conviction proceeding.  As

4  such, he is not entitled to equitable tolling.  *See Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)

5  ("The prisoner must show that the extraordinary circumstances were the cause of his untimeliness.").

6  *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).  Ground 5 is

7  dismissed as untimely under 28 U.S.C. § 2244(d).

8      III.  PROCEDURAL DEFAULT

9      A federal court will not review a claim for habeas corpus relief if the decision of the state

10  court regarding that claim rested on a state law ground that is independent of the federal question and

11  adequate to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991).  The

12  *Coleman* Court stated the effect of a procedural default, as follows:

13      In all cases in which a state prisoner has defaulted his federal claims in state court
        pursuant to an independent and adequate state procedural rule, federal habeas review
14      of the claims is barred unless the prisoner can demonstrate cause for the default and
        actual prejudice as a result of the alleged violation of federal law, or demonstrate that
15      failure to consider the claims will result in a fundamental miscarriage of justice.

16  501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

17      In ruling upon respondents' motion to dismiss, this court determined that grounds 3, 4, and 6

18  were procedurally defaulted in state court on independent and adequate state grounds, but reserved

19  its decision on whether petitioner could demonstrate cause for the defaults and actual prejudice or

20  that failure to consider the claims will result in a fundamental miscarriage of justice.  ECF No. 77, p.

21  5-7.

22      1.  *Ground 3*

23      In ground 3, Nichols alleges that the trial court violated his constitutional right to present a

24  defense when it rejected his lesser included/related offense instructions.  He argues that the claim is

25  not procedurally defaulted because it was not clear that he was entitled to relief on this theory until

26

7

1    the Nevada Supreme Court issued *Rosas v. State*, 147 P.3d 1101 (Nev. 2007), and that the Nevada

2    Supreme Court's reliance on the time interval between *Rosas* and Nichols' presentation of the claim

3    to the state court did not constitute an adequate and independent basis for denying ground 3.  He also

4    claims ineffective assistance of appellate counsel as grounds for failing to comply with state

5    procedural requirements in presenting the claim to the state court.

6         Be that as it may, the claim fails even if it is not barred by the doctrine of procedural default.

7    As noted by the respondents, there is no settled law that failure to instruct on a lesser included

8    offense in a noncapital case would be constitutional error if there were evidence to support the

9    instruction.  *See Turner v. Marshall*, 63 F.3d 807, 819 (9th Cir. 1995), *overruled on other grounds by*

10   *Tolbert v. Page*, 182 F.3d 677 (9th Cir. 1999).   While *Beck v. Alabama*, 447 U.S. 625, 638 (1980),

11   held that such failure is constitutional error in a *capital* case, the Ninth Circuit has declined to extend

12   that holding in a noncapital case.  *See Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir.), *cert. denied*,

13   469 U.S. 838 (1984).  Thus, as explained by the court in *Turner*, "any finding of constitutional error

14   would create a new rule, inapplicable to the present case under *Teague* [*v. Lane*, 489 U.S. 288

15   (1989)]."  *Turner*, 63 F.3d at 819.  Accordingly, ground 3 is denied.

16              2.  *Ground 4*

17        In ground 4, Nichols alleges that the trial court violated his constitutional right to present a

18   defense when it excluded Shawna Wilder's written statement from the trial evidence.  He argues that

19   he can establish cause for the default because he received ineffective assistance of counsel on direct

20   appeal.  The problem with that argument is that a claim of ineffective assistance of counsel as cause

21   to excuse a procedural default must itself be exhausted and not procedurally defaulted.  *Edwards v.*

22   *Carpenter*, 529 U.S. 446, 453 (2000).  Such is not the case here, so Nichols cannot establish cause to

23   excuse the default of ground 4.

24        Moreover, there is no actual prejudice arising from the alleged violation of federal law.

25   Ground 4 is, in essence, a challenge to an evidentiary ruling under state law.  The trial court excluded

26

the written statement based on a finding that it did not appear to be "trustworthy."  ECF No. 45-19, p. 6-7.  On direct appeal, the Nevada Supreme Court concluded that the trial court did not abuse its discretion in excluding the letter and cited to Nev. Rev. Stat. § 51.345, which provides that "[a] statement tending to expose the declarant to criminal liability and offered to exculpate the accused in a criminal case is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

The Nevada Supreme Court's conclusion that the letter was properly excluded under state evidence law is binding on this court.  *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal writ is not available for alleged error in the interpretation or application of state law); *Rhoades v. Henry*, 638 1027, 1034, n. 5 (9th Cir. 2011) ("[E]videntiary rulings based on state law cannot form an independent basis for habeas relief."); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991) (petitioner may not challenge evidentiary ruling on ground that it violated states's evidence code; failure to comply with state rules of evidence does not warrant federal habeas relief).  Accordingly, ground 4 fails in a federal habeas proceeding.

### 3.  *Ground 6*

In ground 6, Nichols alleges that the trial court violated his constitutional right to present a defense when it rejected his proposed instruction as to the proper way for weighing methamphetamine. Here again, Nichols argues that he can establish cause for the default because he received ineffective assistance of counsel on direct appeal.  And for the same reason noted above with respect to ground 4, the argument fails.

As for whether Nichols can demonstrate actual prejudice, ground 6 is, like ground 4, a challenge to the trial court's application of Nevada law.  At the close of the trial, Nichols proposed the following jury instruction: "When methamphetamine is mixed with liquid which consists of unusable chemicals and/or by-products these additional products should not count towards determining the weight of the contraband."  ECF No. 45-21, p. 13.  The trial court rejected the

instruction stating that it "does not appear to be the law in the State of Nevada."  ECF No. 45-19, p. 18.

Nichols contends that the trial court's ruling was contrary to *Sheriff v. Seward*, 858 P.2d 48, 50 and n.1 (Nev. 1992), where the Nevada Supreme Court noted that "unmarketable substances" should not be included in determining the quantity of a controlled substance.  The respondents argue that the ruling was consistent with Nev. Rev. Stat. § 453.3385, the statute under which Nichols was charged, because it allowed for the weight of the specific substance "or any mixture which contains any such controlled substance."  Regardless of which party is correct, ground 6 presents an issue of state law that does not provide a basis for federal habeas relief. *See Estelle*, 502 U.S. at 67–68. Thus, ground 6 is dismissed.

IV.  REMAINING GROUNDS

1. *Standard of Review*

Grounds 1 and 2 were each addressed on the merits by the Nevada Supreme Court.  28 U.S.C. § 2254(d) sets forth the following standard of review under AEDPA for claims that have been adjudicated in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially

1   indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable

2   application" occurs when "a state-court decision unreasonably applies the law of [the Supreme

3   Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not "issue the

4   writ simply because that court concludes in its independent judgment that the relevant state-court

5   decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

6       The Supreme Court has explained that "[a] federal court's collateral review of a state-court

7   decision must be consistent with the respect due state courts in our federal system." *Miller–El v.

8   Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for

9   evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the

10  doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7

11  (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination

12  that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

13  on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)

14  (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized

15  "that even a strong case for relief does not mean the state court's contrary conclusion was

16  unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v.

17  Pinholster*, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and

18  highly deferential standard for evaluating state-court rulings, which demands that state-court

19  decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

20      "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that

21  adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398. In *Pinholster*, the Court

22  reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of

23  the state-court decision at the time it was made," and, therefore, the record under review must be

24  "limited to the record in existence at that same time, i.e., the record before the state court." *Id*.

25  . . .

26

11

2. *Ground 1*

In ground 1, Nichols alleges that he was denied his constitutional right to effective assistance of counsel on appeal because appellate counsel failed to argue that there was insufficient evidence to support a finding of guilt for the charged crimes. According to Nichols, the evidence presented at trial failed to establish beyond a reasonable doubt that he was ever in actual or constructive possession of the drugs at issue. More specifically, he contends that there was no evidence that, at any time, he had exclusive access to the hotel room where the drugs were found. He also points to the time gap of several hours between the time he was arrested and the time the police discovered the drugs coupled with the fact that Shawna Wilder and perhaps others had access to the hotel room during that period.

A criminal defendant enjoys the right to the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 391–97 (1985). The federal court considers claims of ineffective assistance of appellate counsel according to the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d 1428, 1433–34 (9th Cir. 1989). Petitioner must show that appellate counsel's representation fell below an objective standard of reasonableness, and that, but for counsel's errors, a reasonable probability exists that he would have prevailed on appeal. *Id*. (citing *Strickland*, 466 U.S. at 688, 694). The *Strickland* standard for prejudice is higher than the standard of harmlessness that applies to other types of errors in habeas cases. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995).

The federal standard used to test whether sufficient evidence supports a state conviction is the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Mikes v. Borg*, 947 F.2d 353, 356 (9th Cir. 1991). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted).

12

1    In petitioner's first state post-conviction proceeding, the state district court addressed the

2  claim now raised as ground 1 as follows:

3          Petitioner contends that appellate counsel should have attacked the sufficiency
       of the evidence at trial.  This was the main thrust of Petitioner's case at trial.  Mr.
4      Stewart, at every occasion possible, challenged and contended that there was not
       enough evidence linking the Petitioner to the hotel room where the drugs were
5      found, and therefore, he could not be found guilty of "constructively possessing" the
       drugs.  Therefore, Petitioner was not guilty of trafficking.  Evidently, the jury in this
6      case disagreed with the contention of Petitioner and his trial counsel.  The question
       then becomes whether appellate counsel should have raised the issue of whether there
7      was sufficient evidence to convict at trial.

8          In  reviewing evidence supporting a jury's verdict, a court must determine
       whether the jury acting reasonably could have been convinced beyond a reasonable
9      doubt of the Defendant's guilt by competent evidence.  *Wilkins v. State*, 96 Nev. 367,
       374, 609 P.2d 309 (1980).  Where conflicting testimony is presented, the jury
10     determines what weight and credibility to give it.  *Bolden v. State*, 97 Nev. 71, 72,
       624 P.2d 20 (1981).  Therefore, the Court, in this instance, must ask, "whether, after
11     viewing the evidence in the light most favorable to the prosecution, any rational trier
       of fact could have found the essential elements of the crime beyond a reasonable
12     doubt."  *Braunstein v. State*, 18 Nev. Adv. Op. 8 (2002); *Koza v. State*, 100 Nev. 245.
       250, 681 P.2d 44 (1984).

13
           The trial in this case was presented with two competing theories of who
14     possessed [and] trafficked the drugs in question.  The Petitioner and Ms. Wilder
       possessed and trafficked in the drugs or that Ms. Wilder and Ms. Nichols trafficked in
15     the drugs.  The jury, evidently, in judging the credibility of the witnesses and the
       quality and quantity of the evidence presented at trial believed that Petitioner and Ms.
16     Wilder possessed and trafficked in the drugs.  In the instant case, the Defendant was
       driving the car that was located at the Rainbow Casino with various items of drug
17     paraphernalia and his personal belongings located therein.  Shawna Wilder
       approached and inquired about the Defendant at the time he was being confronted and
18     arrested by the sheriff's deputies.  Shawna Wilder admitted to the sheriff's deputies
       that she had stayed in the hotel room (room 1404) at the Rainbow Casino with the
19     Defendant and there was no evidence that Lisa Nichols had ever stayed in that hotel
       room even though the hotel room was registered to her.  There was male clothing
20     found in room 1404 of the Rainbow Casino.  Lieutenant Cook's opinion that based on
       the amount of clothing that one man and one woman occupied the hotel room in
21     question, the chemical odor associated with methamphetamine manufacture detected
       by Lieutenant Cook upon his entry into the hotel room, the fact that Defendant's
22     driver's license was located in a day planner found in luggage located in the hotel
       room was apparently sufficient for the jury to convict the Defendant.  There was
23     certainly more evidence presented linking the Petitioner to the hotel room in question
       thereby providing proof beyond a reasonable doubt that Petitioner had constructively
24     possessed the cocaine and methamphetamine in question, than was present in the case
       of *Marshall v. State*, 110 Nev. 1328, 885 P.2d 603 (1994).

25

26
                                        13

. . . [A]fter viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence presented at trial upon which the trial jury, acting as a rational trier of fact, could have found the elements of trafficking in a controlled substance by constructive possession necessary to convict the Petitioner beyond a reasonable doubt. This would excuse Mr. Stewart from arguing "sufficiency of the evidence" on appeal.

ECF No. 47-6, p. 9-10.

On appeal from that decision, the Nevada Supreme Court adjudicated this claims as follows:

In this case, the district court found that counsel were not ineffective under the standard set forth in *Strickland v. Washington*. [Fn: 466 U.S. 668 (1984).] The district court's factual findings regarding a claim of ineffective assistance of counsel are entitled to deference when reviewed on appeal. [Fn: *See Riley v. State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).] Nichols has not demonstrated that the district court's finding that counsel were not ineffective was not supported by substantial evidence or was clearly wrong. Moreover, Nichols has not demonstrated that the district court erred as a matter of law.

ECF No. 47-12, p. 3-4.

Sufficiency of the evidence claims are judged by the elements defined by state law. *Jackson*, 443 U.S. at 324 n. 16. As noted, Nichols' challenge to the sufficiency of the evidence is premised on a contention that the evidence did not show that he was in actual or constructive possession of the drugs at issue.

The Nevada Supreme Court has explained the doctrine of constructive possession under Nevada law as follows:

Possession may be actual or constructive. The accused has constructive possession only if she maintains control or a right to control the contraband. For instance, possession may be imputed when the contraband is found in a location which is immediately and exclusively accessible to the accused and subject to her dominion and control. Even if the accused does not have exclusive control of the hiding place possession may be imputed if she has not abandoned the narcotic and no other person has obtained possession. The accused is also deemed to have the same possession as any person actually possessing the narcotic pursuant to her direction or permission where she retains the right to exercise dominion or control over the property.

14

1    *Glispey v. Sheriff, Carson City*, 510 P.2d 623, 624 (Nev. 1973) (citation omitted).  Thus, immediate

2    and exclusive access to the location where the contraband is found is one way to establish

3    constructive possession under Nevada law, but it is not the only way.

4        Here, a rational factfinder viewing the evidence in the light most favorable to the prosecution

5    could have found, beyond a reasonable doubt, that Nichols, at the time of his arrest, had retained the

6    right to exercise dominion or control over the drugs.   The jury was presented with undisputed

7    evidence that, in the few days leading up to his arrest, Nichols had purchased a large quantity of

8    ephedrine, an ingredient used to make methamphetamine.  And, as recounted by the state district

9    court in the excerpt above, there was ample evidence that Nichols was involved in the use and

10   manufacture of drugs and that he was occupying the hotel room where the drugs were found.

11       Because the sufficiency of the evidence claim is without merit, Nichols' appellate counsel

12   cannot be deemed deficient for failing to raise the claim.   In addition, Nichols cannot demonstrate

13   that appellate counsel's failure to raise the claim prejudiced him.  At a minimum, fairminded jurists

14   could disagree as to the correctness of the Nevada Supreme Court's decision to deny the ineffective

15   assistance of appellate counsel claim.

16       Based on the foregoing, the Nevada Supreme Court's decision was not contrary to, and did

17   not involve an unreasonable application of clearly established federal law and was not based on an

18   unreasonable determination of the facts in light of the evidence presented.  Accordingly, Nichols is

19   not entitled to habeas relief with respect to ground 1.

20           3.  *Ground 2*

21       In ground 2, Nichols alleges that his constitutional rights were violated because the trial court

22   mishandled a juror's acknowledgment of multiple contacts with a key defense witness.  According to

23   Nichols, defense witness Mark Humphries "verbally confronted" juror Ramona Hintz in the

24   courthouse parking lot a day or two prior to his trial testimony and complained about delay in being

25

26

called as a witness.  Nichols further alleges that, following his testimony, Humphries waved at Hintz from an adjacent vehicle, prompting her to write note to the trial judge about the contacts.

Nichols argues that the trial court's inquiry into the matter was incomplete and inadequate. Specifically, Nichols contends that the trial court asked Hintz suggestive leading questions about the matter before defense counsel had an opportunity to question her.  In addition, Nichols faults the trial court for not asking whether the contacts had reduced her belief in Humphries' credibility in light of the fact that Hintz had indicated that the contacts had given her a negative impression of him.

In *Mattox v. United States*, 146 U.S. 140 (1892), the Supreme Court held that "[p]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox*, 146 U.S. at 150.  In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court reversed a conviction under *Mattox* when it was shown that during the trial someone had told the jury foreman that he could profit by acquitting the defendant.  *Remmer*, 347 U.S. at 228. The Court in *Remmer* held that *Mattox*'s "presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* at 229.

The Supreme Court has also recognized, however, that "it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).  Thus, the Ninth Circuit has held that, when an unauthorized communication with a juror was "*de minimis*," "the defendant must show that the communication could have influenced the verdict before the burden of proof shifts to the prosecution." *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004).  A communication is possibly prejudicial – i.e., not *de minimis*, if it "raises a risk of influencing the verdict." *Id.* at 697.

On direct appeal, the Nevada Supreme Court adjudicated the claim now raised as ground 2 as follows:

16

1    Nichols next contends that the district court erred in not dismissing juror
2    Ramona Hintz.  Hintz allegedly had communications with one of Nichols' witnesses.

3    Not every contact between a juror and a witness merits a new trial, and the
     matter is subject to the discretion of the district court.  [Fn: *Roever v. State*, 111 Nev.
     1052, 1055, 901 P.2d 145,146 (1995)].  A new trial must be granted unless it appears
4    beyond a reasonable doubt that the contact did not prejudice the defendant.  *Id.*

5    Here, Hintz told the court that the day before Nichols' witness testified, the
     witness told her to tell the district court "that I have been sitting here since 9:30
6    [a.m.]."  The witness also waved to Hintz the next day.  Hintz assured the district
     court that this witness contact had no bearing on her ability to be fair or otherwise
7    prejudice her as a juror.

8    The district court concluded that the contact was incidental.  We agree.  The
     record demonstrates beyond a reasonable doubt that this minimal contact had no
9    prejudicial effect on juror Hintz.  Accordingly, we conclude that Nichols' contention
     is without merit.
10

11   ECF No. 46-25, p. 12.

12   Although the Nevada Supreme Court did not cite any U.S. Supreme Court authority, the

13   "harmless beyond a reasonable doubt" standard that it applied was consistent with the holding in

14   *Remmer*.  *See United States v. Rutherford*, 371 F.3d 634, 641 (9th Cir. 2004) (noting that *Remmer*

15   standard places "a heavy burden on the government to rebut the presumption by proving that the

16   error was harmless beyond a reasonable doubt.").  This is sufficient for the a decision to avoid being

17   "contrary to" clearly established federal law for the purposes of § 2254(d).  *See Early v. Packer*, 537

18   U.S. 3, 8 (2002) (noting that, irrespective of whether state court decision cites U.S. Supreme Court

19   cases, it will not run afoul of the "contrary to" clause so long as neither the reasoning nor the result

20   of the decision contradicts Supreme Court precedent).

21   As for the state court's conclusion that the contacts had no prejudicial effect, the court in

22   *Caliendo* identified the factors to be considered in making that determination:

23    Whether an unauthorized communication between a juror and a third party
     concerned the case is but one factor in determining whether the communication raised
24   a risk of influencing the verdict.  Other factors may include the length and nature of
     the contact, the identity and role at trial of the parties involved, evidence of actual
25   impact on the juror, and the possibility of eliminating prejudice through a limiting
     instruction.  In weighing these factors we generally accord some deference to the
26

17

1   findings of the trial judge, who is in the best position to determine whether possibly
2   prejudicial misconduct took place and, if so, whether the government clearly
    established harmlessness.

3   *Caliendo*, 365 F.3d at 697-98 (citation omitted).

4          In arguing that the Nevada Supreme Court's decision was an unreasonable application of

5   clearly established federal law and based on an unreasonable determination of the facts, Nichols

6   attempts to analogize his case to *Caliendo*, where the court concluded that the government had not

7   proved harmlessness.  In *Caliendo*, however, "three deliberating jurors chatted amiably and at length

8   with the critical prosecution witness in an uncontrolled setting."  *Id*. at 699.  In addition, the "case

9   was close," with Caliendo's first trial ending in hung jury with seven jurors voting to acquit.  *Id*. at

10  698-99.  These important factors serve to distinguish *Caliendo* from the instant case.

11         Nichols asserts that Humphries' testimony was "extremely important" because he was the

12  only defense witness to establish that Lisa Nichols was a real person who had been in Wendover at

13  the relevant time.  However, the testimony was not nearly critical as the testimony of the witness in

14  *Caliendo*, which stood at the center of the prosecution's case.  *Id*.  While it may have been helpful to

15  the defense, Humphries' testimony was by no means pivotal given that the jury could have accepted

16  it as entirely credible and still had ample evidence  upon which to find Nichols guilty.  In addition,

17  the contacts between Humphries and Hintz were fleeting chance encounters, with no discussion of

18  the case and little, if any, potential for the contacts to significantly influence Hintz's opinion of

19  Humphries' credibility.  The Nevada Supreme Court's decision to reject ground 2 was not an

20  unreasonable application of Supreme Court precedent, nor was it based on an unreasonable

21  determination of the facts.  Ground 2 is denied.

22         IV.  CONCLUSION

23         For the reasons set forth above, Nichols' petition for habeas relief is denied.

24  \ \ \

25  \ \ \

26

18

*Certificate of Appealability*

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right."  With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Nichols' petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of any procedural issues or any of Nichols' habeas claims.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (ECF No. 62) is DENIED.

**IT IS FURTHER ORDERED** that a certificate of appealability is DENIED.

Dated August 18, 2015.

_____
UNITED STATES DISTRICT JUDGE

19